IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BARRY WAYNE HUDSON, | ) | Civil Action No. 7:14-cv-00326 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FREDRICK MATHI | ) | |
| MOSES, et al, | ) | By: Norman K. Moon |
| Defendants. | ) | United States District Judge |

The pro se plaintiff, Barry Wayne Hudson, is presently an inmate at the Pocahontas State Correctional Center, a facility of the Virginia Department of Corrections. Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that, when he was housed in the New River Valley Regional Jail ("NRVRJ"), the defendants' deliberate indifference to his serious medical condition violated the Eighth Amendment, which protects prisoners from cruel and unusual living conditions. The defendants have moved for summary judgment, and plaintiff has responded. For the reasons stated herein, I will grant defendants' motion for summary judgment.

**I**.

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Id.*; *see also JKC Holding Co. v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250. In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See*, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

The mere existence of "some" factual disputes will not defeat summary judgment; the dispute must be "genuine" and concern "material" facts, *Anderson*, 477 U.S. at 247–248; *see also Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008); in other words, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only legitimate disputes over facts that might affect the outcome of the suit under the governing law fall within that category. *Id.*; *see also Fields v. Verizon Servs. Corp.*, 493 Fed. App'x 371, 374 (4th Cir. 2012).

**II**.

Unless otherwise stated, the facts here are undisputed.

Frederick Moses, M.D. is a physician licensed in Virginia. He provides medical services to inmates at NRVRJ, where plaintiff was previously held. Betty Akers is a registered nurse who supervises the medical department at New River Valley Regional Jail. Nurse Akers did not provide direct medical care to plaintiff, but she responded to his grievances and requests.

2

On December 3, 2013, Dr. Moses examined plaintiff regarding a complaint of a right testicular mass. Plaintiff states that he experienced pain in his abdomen, but Dr. Moses affirms that plaintiff presented without pain, and plaintiff's medical record reflects the observation that plaintiff "denie[d] any pain." Dr. Moses referred plaintiff for an ultrasound, which was performed on December 23, 2013, confirming the existence of a mass in plaintiff's right testicle, indicating either an epididymal cyst, also called a spermatocele. *See* https://en.wikipedia.org/wiki/Spermatocele (redirected from "epididymal cyst") (last accessed August 24, 2015). Dr. Moses's affidavit describes spermatoceles as "noncancerous (benign) fluid filled cysts, that are separate and distinct from the testicle itself," that "[t]hey are generally no more than a nuisance rather than a serious medical condition," and that "[t]hey rarely require treatment other than observation." Dr. Moses further states that spermatoceles are "typically painless"; however, various sources observe that, although "[s]permatoceles are generally not painful" and "are harmless," "some men may experience discomfort from larger spermatoceles." *See supra* https://en.wikipedia.org/wiki/Spermatocele.

Dr. Moses did not see plaintiff again until May 13, 2014. Plaintiff reported that the mass was growing and he complained of grown pain on his right side. Dr. Moses noted that the right testicular lesion was tender to palpation, with no redness. Plaintiff wanted to be examined by an outside urologist, but Dr. Moses did not think that a referral was medically necessary based upon the findings of the ultrasound and plaintiff's clinical presentation. In Dr. Moses's medical opinion, plaintiff's spermatocele was not a serious medical condition, and he declined to refer Plaintiff to an outside urologist at the expense of NRVRJ. Plaintiff, however, insisted that he

3

should be referred to a urologist, and stated that his family would pay for the appointment. Accordingly, Dr. Moses authorized the referral at plaintiff's own expense.

NRVRJ policy provides that no inmate will be denied necessary medical treatment because of the inmate's inability to pay. Dr. Moses's determination (that a referral to a urologist was not medically necessary) was conveyed to the nursing staff who were responsible for making medical appointments outside of the facility. Nurse Akers and the other nursing staff were prohibited by NRVRJ policy from scheduling outside medical appointments at the jail's expense when the physician has authorized the appointment as elective, rather than medically necessary. Under those circumstances, Nurse Akers makes the appointment if the inmate makes other arrangements for payment.

After receiving the referral to the urologist, Plaintiff was unable to get his family to pay for the appointment, and the appointment was canceled. Because Dr. Moses had determined that the referral was not medically necessary, Nurse Akers denied plaintiff's grievance requesting that the appointment be made at NRVRJ's expense. Plaintiff appealed the denial of the grievance to the NRVRJ Superintendent, who directed that the appointment be made.

Pursuant to the superintendent's instructions, medical staff called on or about May 27, 2014, to set the appointment with the urologist. The appointment was scheduled for June 30, 2014, and plaintiff was examined by the urologist on that date. Plaintiff complained of mild pain with some radiation into the groin. The urologist diagnosed a "minimally symptomatic" spermatocele that was of "no health concern." The urologist provided no treatment to plaintiff, and did not recommend any treatment of follow-up appointment.

4

**III.**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain," which includes "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state an Eighth Amendment claim, a prisoner must plead two elements: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." *Id*. A medical need is "serious" if it has been diagnosed by a physician as mandating treatment or if it is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement. In order to demonstrate such an extreme deprivation, a prisoner "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions," *Strickler v. Waters*, 989 F. 2d 1375, 1381 (4th Cir. 1993) or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions, *see Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. *Id*.; *see also Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "To establish that a [prison] health care provider's actions constitute deliberate indifference to a

5

serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted), *superannuated on other grounds by Farmer*, 511 U.S. at 837. Mere disagreements between an inmate and the medical staff as to medical treatment do not state a claim upon which relief can be granted, as questions of medical judgment are not subject to judicial review. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

Here, plaintiff has not demonstrated that he had a serious medical need or that he was at a substantial risk of serious harm. According to Dr. Moses and the urologist, the spermatocele is benign and of "no medical concern." Beyond observation, there is no treatment plan for plaintiff's spermatocele. Without any suggestion of medical evidence to the contrary, plaintiff cannot establish that he suffers from a serious medical need. *See Bell v. Secretary of Florida Dept. of Corrections*, 491 F. App'x 57 (11th Cir. 2012) (no serious medical need where plaintiff did not show that his testicular cyst, if left unattended, posed a substantial risk of serious harm); *Crews-Bey v. Barber*, Civil Action No. 1:11-cv-00083, 2013 WL 1163879, 2013 WL 1163883 (S.D. Ala.) (no serious medical need where a sonogram revealed that inmate had a small, benign cyst on his right testicle, doctors advised that no treatment was indicated for the cyst, recommended acetaminophen for pain); *McCarty v. McKellar*, Civil Action No. 2:06-cv-00004, 2007 WL 3225360 (S.D. Miss) (jail physician not deliberately indifferent to a serious medical need where inmate was diagnosed with a spermatocele and surgical removal was not medically necessary).

In essence, plaintiff complains that, for a brief time, he was denied a referral to the

urologist.  However, the medical evidence establishes that his condition was not medically serious, and that the referral to the urologist was elective.  An inmate is not entitled to "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care.").  "The right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).  An inmate's disagreement with medical providers about the proper care and course of treatment does not support a § 1983 claim, in the absence of "exceptional circumstances" not present here.  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *see also Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977); *Russell*, *supra*, 528 F.2d at 319.  "[A]n inmate does not have a constitutional right to specific medical treatment on demand, simply because he thinks he needs a certain procedure, nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical personnel." *Stroud v. Warden*, Civil Action No. 1:12-cv-01354, 2012 WL 5839870 (D. Md.) (citing *Hudson*, 503 U.S. at 9).

Plaintiff did not suffer any harm as a result of the alleged "delay," given that the urologist confirmed Dr. Moses's diagnosis, and the urologist likewise did not recommend any treatment. *See Webb v. Hamidullah*, 281 Fed. Appx. 159, 167 (4th Cir. 2008) ("in order to defeat summary judgment on the delay issue, Webb was obligated to establish that the delay in his surgery caused him substantial harm"); *see also Tyler v. Sullivan*, 83 F.3d 433 (Table), 1996 WL 195295(10th Cir.) (a delay in providing elective surgical treatment of a testicular cyst did not result in any substantial harm).  *Cf. Miltier*, *supra*, 896 F.2d at 852-53 (concluding that, where inmate suffered

7

heart attack and died, jury could find physicians were deliberately indifferent by failing to follow up on recommendations for inmate's cardiac care).

In summary, even were plaintiff able to show that his spermatocele constituted a serious medical need, he cannot show that the defendants were deliberately indifferent. Dr. Moses examined plaintiff when he complained, ordered an ultrasound, and concluded that plaintiff had a benign spermatocele that did not warrant treatment. Subsequently, plaintiff was authorized for an elective referral to an outside specialist at NRVRJ's expense, and that specialist confirmed Dr. Moses's diagnosis and treatment plan – which was to provide not treatment. Dr. Moses's actions cannot be described as "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, *supra*, 896 F.2d at 851. Plaintiff's disagreement with Dr. Moses's exercise of medical judgment does not give rise to a constitutional claim.

**IV**.

For the reasons stated, I will grant defendants' motion for summary judgment. An appropriate order accompanies this memorandum opinion.

**ENTERED**: This __26th__ day of August, 2015.

_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE